IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | |
|---|---|
| Joe Hand Promotions, Inc., | * |
| Plaintiff, | * |
| vs. | * |
| | CASE NO. 4:12-cv-129 (CDL) |
| Martha D. Watley and The Dawg House, | * |
| | * |
| Defendants. | * |
| | * |

O R D E R

Plaintiff Joe Hand Promotions, Incorporated ("Joe Hand") filed this action against Defendants Martha Watley ("Watley") and The Dawg House seeking damages for their alleged unauthorized broadcast of *Ultimate Fighting Championship 134: Silva vs. Okami* ("the Championship") in violation of the Communications Act of 1934 ("the Communications Act"), 47 U.S.C. § 605, and the Cable and Television Consumer Protection and Competition Act of 1992, 47 U.S.C. § 553. Presently pending before the Court is Joe Hand's Motion for Partial Summary Judgment against Defendants as to their liability and statutory damages under § 605 (ECF No. 10). The Court finds that a genuine factual dispute exists as to Watley's liability, and therefore, summary judgment is not appropriate as to the claim against her. The Court also finds that Joe Hand has failed to establish that "The Dawg House" is a legal entity capable of

being sued, and therefore, summary judgment is likewise denied as to Joe Hand's claims against "The Dawg House." Accordingly, Joe Hand's motion is denied.

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

DISCUSSION

Joe Hand seeks partial summary judgment as to both Watley and "The Dawg House." The Court addresses Joe Hand's motion as to each Defendant in turn.

Joe Hand apparently has no idea whether "The Dawg House" is a legal entity capable of being sued. It alleges in its Complaint that it may be a corporation, a partnership, or a sole proprietorship. Compl. ¶¶ 9-12, ECF No. 1. Apparently,

subsequent discovery provided no clarification as to its legal status.  Based on the present record, which must be construed in favor of Defendants, it appears that "The Dawg House" is a trade name, either for Dee's Dawgs LLC, which is not a party, or for Watley.  *See* Watley Aff. Ex. C, Certificate of Registration, ECF No. 15 at 9.  In any event, Joe Hand certainly has not established that "The Dawg House" is a separate legal entity capable of being sued, and therefore, Joe Hand's motion for summary judgment against "The Dawg House" is denied.

The next question is whether Watley is personally liable for the airing of the broadcast that occurred at the business known as "The Dawg House."  According to Watley, "The Dawg House" is owned and operated by Dee's Dawgs LLC, which Watley registered with the Secretary of State.  All day-to-day business is paid for through a Dee's Dawgs LLC checking account at SunTrust Bank.  Watley is the only person with a financial interest in The Dawg House.  The Dawg House liquor license was in Watley's name at all relevant times.  2011 License to Sell Alcoholic Beverages, ECF No. 13-8 at 7.

Joe Hand is a promotional company in the business of marketing and licensing commercial exhibitions of prizefight events.  Joe Hand owned the exclusive rights to license the exhibition of the Championship to commercial establishments.  Distributorship Agreement ¶ 2, ECF No. 13-4.  Joe Hand licensed

3

the Championship at rates based on venue capacity: $900 for 0 to 50 patrons; $1,100 for 51 to 100; and, $1,200 for 101 to 150 patrons. Championship Rate Card, ECF No. 10-2.

Neither Watley nor The Dawg House ordered the Championship from Joe Hand for broadcast. Joe Hand did not license or authorize The Dawg House or Watley to broadcast the Championship. Nevertheless, the Championship was broadcast at The Dawg House when it aired on August 27, 2011. The Dawg House used Watley's residential satellite television account to order and obtain the Championship to broadcast at the bar. DIRECTV Statement (Aug. 31, 2011), ECF No. 13-8 at 16. Watley contends that she did not personally order the Championship, and she was not at The Dawg House on the night of the broadcast. Watley alleges that bar manager Frank Camacho, who was responsible for all daily business at The Dawg House during the relevant time and who is now deceased, ordered the Championship on her residential satellite account. Watley Aff. ¶¶ 8-10, ECF No. 15. Forty-five patrons were present when the Championship was broadcast on one large television. One of Joe Hand's auditors witnessed the unauthorized broadcast.

In its Partial Motion for Summary Judgment, Joe Hand seeks summary judgment on liability for Defendants' alleged violation of 47 U.S.C. § 605, an award of statutory damages to Joe Hand for that violation, and a permanent injunction to enjoin

4

Defendants from future violations of the Communications Act. Joe Hand requests that the Court leave the issue of enhanced damages for trial.

Section 605 of the Communications Act provides as follows:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

47 U.S.C. § 605(a). This section "prohibits the unauthorized third party reception of satellite transmissions intended for fee-paying subscribers." *Showtime/The Movie Channel, Inc. v. Covered Bridge Condo. Ass'n,* 881 F.2d 983, 988 (11th Cir. 1989), *vacated on other grounds by* 895 F.2d 711 (11th Cir. 1990). Liability under § 605 "does not require a knowing violation." *Kingvision Pay Per View, Ltd. v. Williams*, 1 F. Supp. 2d 1481, 1484 (S.D. Ga. 1998). To establish a violation of § 605, a plaintiff "must establish that (1) the Defendants intercepted

the program, (2) Defendants did not pay for the right to receive the transmission, and (3) Defendants displayed the program to patrons of their commercial establishment." *Zuffa, LLC v. Al-Shaikh*, No. 10-00085-KD-C, 2011 WL 1539878, at *4 (S.D. Ala. Apr. 21, 2011) (citing *J & J Sports Prods., Inc. v. Just Fam, LLC*, No. 1:09-cv-03072-JOF, 2010 WL 2640078, at *2 (N.D. Ga. June 28, 2010)).

The record establishes that (1) someone associated with "The Dawg House" intercepted the Championship, (2) that no one paid for the right to receive the transmission at "The Dawg House," and (3) that the Championship was displayed at "The Dawg House" to 45 of its patrons. These undisputed facts show that someone associated with "The Dawg House" likely violated § 605 and may be liable to Plaintiff. *See, e.g.*, *Joe Hand Promotions, Inc. v. McBroom*, No. 5:09-cv-276(CAR), 2009 WL 5031580, at *3 (M.D. Ga. Dec. 15, 2009) (concluding that defendant's liability for violation of § 605 was established because the undisputed evidence showed defendants intercepted the satellite transmission of a boxing match without paying for the right to receive the transmission and then broadcast the match to the restaurant patrons); *Kingvision*, 1 F. Supp. 2d at 1484-85 (finding that the undisputed facts showed the defendant displayed a boxing match to its patrons without contractual authorization from plaintiff and, thus, violated § 605). But,

6

Joe Hand also has the burden of identifying the violator of the statute. As explained previously, Joe Hand has failed to establish that "The Dawg House" is liable as a matter of law.

Joe Hand also seeks to hold Watley individually liable. To hold Watley vicariously liable in her "individual capacity and as officer, director, shareholder, and/or principal" of The Dawg House (or whatever legal entity actually controls "The Dawg House") under § 605, Joe Hand must show that Watley had a "right and ability to supervise the violations, and that [s]he had a strong financial interest in such activities." *Joe Hand Promotions, Inc. v. Blanchard*, No. 409CV100, 2010 WL 1838067, at *3 (S.D. Ga. May 3, 2010) (internal quotation marks omitted); *McBroom*, 2009 WL 5031580, at *4 (internal quotation marks omitted). Watley was not present at The Dawg House on the day the Championship was wrongfully intercepted and broadcast to the bar's patrons. Watley Aff. ¶ 7. Further, she contends that the bar manager Frank Camacho was in charge of the daily business and ordered the Championship. *Id.* ¶¶ 9-10. Accordingly, the Court finds that a genuine factual dispute exists as to whether Watley had supervisory control over the decision to intercept and show the Championship at "The Dawg House," and summary judgment is not appropriate as to Watley's liability.

CONCLUSION

For the foregoing reasons, the Court denies Joe Hand's Motion for Partial Summary Judgment (ECF No. 10).

IT IS SO ORDERED, this 2nd day of July, 2013.

S/Clay D. Land<br>
CLAY D. LAND<br>
UNITED STATES DISTRICT JUDGE